1  **CARL GORDON**
2  **UNIVERSITY OF THE 'HOOD®**
   8306 Wilshire Blvd., No. 792
3  Beverly Hills, CA 90211
4  Tel. (310) 926-3939
   Email: universityofthehood@gmail.com
5  Plaintiff Pro Se, Carl Gordon

FILED
CLERK, U.S. DISTRICT COURT
1/20/2026
CENTRAL DISTRICT OF CALIFORNIA
BY_____GSA_____DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

6
7           **UNITED STATES DISTRICT COURT**
   **CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION**
8

9  **CARL GORDON**,                    CASE No: 2:25-cv-12427-SVW-MAAx
10
11              PLAINTIFF,              **FIRST AMENDED COMPLAINT**

12      v.                             **(Declaratory and Prospective
                                       Injunctive Relief)**
13 **GAVIN NEWSOM**, IN HIS OFFICIAL
   CAPACITY AS GOVERNOR OF            **(28 U.S.C. §§ 1331, 1343, 2201–2202)**
14 CALIFORNIA;
                                       **(Three-Judge Court Required Under
15 **SHIRLEY N. WEBER**, IN HER        28 U.S.C. § 2284)**
   OFFICIAL CAPACITY AS CALIFORNIA
16 SECRETARY OF STATE;

17 DOES 1 THROUGH 10,

18              DEFENDANTS.
19

20

21

22

23

24 **FIRST AMENDED COMPLAINT**

25

26

27

28

## STATEMENT OF THE CASE

Octogenarian Plaintiff Carl Gordon is a long-standing California voter who has participated as a registered voter in approximately ninety percent of all primary and general elections since casting his first ballots in 1968. He holds a Master of Public Administration (MPA) from the University of Southern California (USC). Plaintiff has a concrete and particularized interest in the lawful administration of elections. His injuries arise from election statutes and practices that directly affect the integrity and legality of the electoral process governing his right to vote and as a candidate, are fairly traceable to the challenged conduct, and are redressable through declaratory and prospective injunctive relief. Plaintiff's interest is nonpartisan and arises from his personal stake as a voter and his one-time status as a fee-paying potential replacement candidate in the 2021 gubernatorial recall election.

Proposition 50 must be adjudicated as the endpoint of a coordinated legislative, executive, administrative, funding, and judicial chain that now governs future elections, including those scheduled for June and November 2026. As of January 14, 2026, pursuant to the 2–1 decision in *David Tangipa v. Gavin Newsom*, No. 2:25-cv-10616 (C.D. Cal.), a three-judge district court permitted the continued use of the congressional redistricting maps adopted pursuant to Proposition 50 for upcoming federal elections. Those maps are scheduled to remain in effect through 2030, spanning four federal election cycles, thereby giving the challenged enactments ongoing and prospective legal effect.

This case concerns an institutional breakdown arising from the interaction of (a) state election administration, (b) federally funded election infrastructure

governed by federal law, including HAVA-related funding and oversight mechanisms, and (c) judicial processes that failed to provide neutral and timely adjudication of structural constitutional claims. Federal funds and federally supported election infrastructure were used to administer elections between 2020 and 2025 under an unconstitutional state framework, by decisionmakers who knew or should have known of the underlying constitutional defects.

Plaintiff alleges that these defects caused financial loss to the United States, the State of California, Plaintiff, similarly situated potential replacement candidates, and California's approximately 22 million registered voters across multiple election cycles—from the contested 2020 presidential election through the Ninth Circuit's published, binding non-mootness ruling concerning the 2021 California gubernatorial recall election—and resulted in continuing constitutional injury and institutional harm culminating in the November 4, 2025 special election conducted pursuant to the Election Rigging Response Act.

On December 19, 2025, in *Tangipa v. Newsom*, No. 2:25-cv-10616, Plaintiff, as a proposed intervenor, moved under Federal Rules of Civil Procedure 24(a) and 24(b) seeking limited participation to present relevant and timely information concerning Proposition 50. That motion was denied, even as other parties were granted leave to intervene. Plaintiff sought intervention solely to protect distinct federal constitutional and statutory interests directly implicated by the pending election-law proceedings.

Plaintiff alleges that two independent legal constraints governed the actions at issue. First, constitutional authority. The California Constitution recognizes circumstances of executive "temporary disability" under Article V, section 10,

during which acts taken without lawful authority are void from inception. Plaintiff alleges that core components of the Proposition 50 legislative and administrative framework were enacted and implemented during such a period, rendering them void ab initio and incapable of cure by later reliance, implementation, or voter approval. Second, federal supremacy. State election administration that implicates federally governed election funds is subject to binding federal conditions. Where state enactments and implementation conflict with those conditions, they are preempted under the Supremacy Clause.

The case further alleges institutional conflict at the Department of Justice, where officials acting on behalf of the United States participated in declination and related decisions while personally conflicted by parallel litigation arising from the same factual nucleus. Plaintiff also alleges a structural due-process failure: the suppression and delayed disclosure of critical federal oversight evidence, combined with conflicted institutional decision-making, obstructed timely and neutral merits adjudication.

These allegations are presented as matters of record. The significance of this case does not rest solely on the challenged election, but on how the enactments and administrative actions at issue were subsequently treated by state officials and federal courts as settled and operative authority, despite unresolved constitutional and federal-law defects apparent on the face of the record. Plaintiff alleges that jurisdictional anomalies, procedural compression, and adjudicative outcomes permitted the continued enforcement of challenged election frameworks without a full merits determination.

The issues presented transcend Plaintiff individually. They affect the integrity of federal election funding nationwide, the constitutional limits of state authority when federal funds are involved, and the operation of Article III courts when structural conflicts and evidentiary suppression impair adjudicative neutrality. The question presented is narrow but consequential: whether statewide election laws and redistricting measures advanced and enforced without lawful authority, and implicating federal funding conditions, may continue to be treated as settled law absent full constitutional adjudication.

## STATEMENT OF FEDERAL INTERESTS AND NATIONAL IMPORTANCE

This action implicates compelling federal interests that extend far beyond the parties and require merits adjudication.

The United States has a paramount interest in ensuring that federal election funds, including funds governed by the Help America Vote Act (HAVA), are expended only in compliance with constitutional and statutory requirements.

Federal election funding is conditioned on neutrality, legality, and adherence to constitutional limits. When state officials administer elections using federally supported infrastructure under an unconstitutional framework, the resulting expenditures undermine federal law and the supremacy of federal conditions.

The integrity of federal election funding is a matter of national importance. Misuse of such funds in one state establishes precedent that threatens uniform administration and public confidence nationwide.

This case further implicates the federal judiciary's institutional role. Article III courts have a constitutional obligation to provide neutral forums for adjudicating federal claims, particularly where federal funds and constitutional rights intersect.

Allegations of institutional conflict and suppression of federal oversight evidence raise questions concerning the capacity of judicial and executive institutions to function when officials act under disabling conflicts.

The Supreme Court has repeatedly recognized that cases presenting structural constitutional defects, federal supremacy questions, and threats to institutional integrity warrant careful and complete adjudication.

Absent judicial resolution, the issues presented here are capable of repetition yet evading review, as election-related misconduct tied to federal funding often concludes before merits review can occur.

The federal interests at stake include not only redress for past injury but also prospective guidance necessary to prevent recurrence and preserve the constitutional balance between state election administration and federal authority. Plaintiff further alleges that the absence of a prior merits adjudication of these federal constitutional and supremacy issues is attributable to procedural posture, including the denial of Plaintiff's request for limited intervention under Federal Rule of Civil Procedure 24 in related proceedings, and not to waiver, forfeiture, or prior judicial resolution. Accordingly, the federal interests implicated here— including the supremacy of federal funding conditions, the integrity of federally regulated elections, and the obligation of Article III courts to provide full merits adjudication of structural constitutional claims—remain live, unresolved, and appropriate for review in this action.

Accordingly, federal election funds may not be used—directly or indirectly—at facilities where alcohol is sold or dispensed, regardless of physical separation, timing, or creative structuring. When such funds are used notwithstanding these restrictions, the issue presented is not one of administrative discretion or state policy preference, but objective federal noncompliance. Such noncompliance undermines the conditions Congress attached to federal election funding, implicates the Supremacy Clause, and creates a structural defect in election administration as a matter of federal law. The United States has a paramount interest in ensuring that federally funded elections are conducted in strict compliance with governing federal statutes and regulations, and that violations are subject to full merits adjudication rather than insulated by interim election administration or post hoc reliance.

# I. PRELIMINARY STATEMENT

On November 4, 2025, the State of California conducted a statewide special election on Proposition 50. The measure was presented to voters as a routine constitutional amendment, administered through established election procedures, and implemented as binding law with prospective effect on statewide elections and redistricting.

This First Amended Complaint alleges that the process by which Proposition 50 was enacted, administered, and subsequently treated as settled authority was not routine.

This filing is submitted to preserve a complete and accurate public record of that chain.

As alleged here, two independent legal constraints governed the actions at issue.

First, constitutional authority. The California Constitution recognizes circumstances of executive "temporary disability" under Article V, section 10, during which certain acts taken without lawful authority are void from inception. Plaintiff alleges that core components of the Proposition 50 legislative and administrative package were enacted and implemented during such a period, rendering them void *ab initio*, incapable of cure by later reliance, implementation, or voter approval.

Second, federal supremacy. State election administration that implicates federally governed election funds is subject to binding federal conditions. Where state enactments and implementation conflict with those conditions, they are preempted under the Supremacy Clause. Plaintiff alleges that the administration of Proposition 50 implicated federal election funding restrictions, raising questions that extend beyond state law and into federal oversight.

In particular, this action challenges the federally funded implementation of California's election framework under Proposition 50 and its enabling legislation, including Assembly Bill 2037, Assembly Constitutional Amendment 8, Senate Bill 280, and Assembly Bill 604. California administers statewide elections using federal election grants provided through the U.S. Election Assistance Commission pursuant to the Help America Vote Act and related appropriations, all of which are subject to the Uniform Guidance and the categorical prohibition in 2 C.F.R. § 200.423 against the use of federal funds in connection with alcohol-serving facilities. Although AB 2037 authorizes polling locations in facilities that sell or serve alcohol under state law, federal grant conditions remain controlling and non-waivable. Because federally funded election infrastructure is deployed system-wide, the placement of polling locations in alcohol-serving venues

necessarily implicates federal funds and creates a structural conflict with binding federal cost-allowability rules. This action seeks declaratory and prospective relief to ensure that congressional redistricting maps and future statewide elections implemented pursuant to Proposition 50 are administered in compliance with federal election-funding law, independent of the outcome of prior elections or interim rulings.

These allegations are presented as matters of record, not rhetoric.

The significance of this case does not rest solely on the challenged election. It rests on how those enactments and administrative actions were subsequently treated—by state officials and by federal courts—as settled and operative authority, despite unresolved constitutional and federal-law questions apparent on the face of the record.

This filing therefore necessarily addresses not only executive and legislative actions, but also the institutional handling of those actions within the federal judicial system, including proceedings in the United States District Court for the Central District of California and the United States Court of Appeals for the Ninth Circuit. The issue presented is not the good faith of individual judges, but whether the judicial process functioned as a neutral forum capable of timely and complete adjudication of structural constitutional claims with statewide consequences.

Plaintiff alleges that it did not.

As detailed below, the record reflects jurisdictional anomalies, procedural compression, and adjudicative outcomes that permitted the continued enforcement of challenged election frameworks without a full merits

determination of the governing constitutional and federal-law constraints. These are not allegations of motive. They are descriptions of institutional outcomes, grounded in dates, filings, orders, and publicly verifiable proceedings.

The audience for this filing therefore extends beyond the immediate court. This document is submitted as a record vehicle for review by the American people, the United States Congress—which holds legislative and oversight authority over federal courts and constitutional governance—the United States Supreme Court, and the Judicial Conference of the United States, which bears responsibility for the integrity of the federal judicial system.

The question presented is narrow, but consequential:

If statewide election laws and redistricting measures were advanced and enforced without lawful authority, and if federal funding conditions were implicated in that enforcement, then the continued treatment of those measures as settled law—without full adjudication—represents a systemic failure that must be documented before it is normalized.

What follows is that documentation.

## II. JURISDICTION AND STATUTORY FRAMEWORK

This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because this case arises under the Constitution and laws of the United States, including the Supremacy Clause of the United States Constitution and federal statutes governing election administration and federally funded election infrastructure.

This Court further has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. Plaintiff seeks declaratory and prospective injunctive relief to resolve actual and ongoing controversies concerning the constitutional validity and continuing legal effect of statewide election laws and redistricting measures that govern future elections, including those scheduled for June and November 2026 and subsequent election cycles.

Jurisdiction is proper because Plaintiff alleges continuing and prospective injury resulting from the enforcement and treatment of Proposition 50 and related election frameworks as settled and operative authority, despite unresolved constitutional and federal-law defects. The challenged enactments and administrative actions continue to govern election administration and redistricting and therefore present live controversies capable of redress through declaratory and prospective relief.

This Court's jurisdiction does not depend on the ultimate merits of Plaintiff's claims. Where substantial constitutional questions are presented and prospective relief is sought, jurisdiction exists to adjudicate those questions and to determine the lawful scope of state authority when federal constitutional and statutory constraints are implicated.

## Mandatory Three-Judge Court Requirement (28 U.S.C. § 2284)

This action is subject to the mandatory three-judge court requirement under 28 U.S.C. § 2284(a) because it challenges the constitutionality of the apportionment and redistricting framework governing congressional elections on a statewide basis and seeks declaratory and prospective injunctive relief restraining the enforcement and continued legal effect of those provisions.

Pursuant to 28 U.S.C. § 2284(b)(1), the district judge to whom this action is assigned is required to immediately notify the chief judge of the circuit, who shall designate two other judges to serve on a three-judge district court. The statute imposes a nondiscretionary obligation to convene such a court where the pleading presents a substantial constitutional challenge to statewide redistricting or apportionment measures.

Plaintiff expressly invokes 28 U.S.C. § 2284 for purposes of jurisdictional compliance and record preservation. This invocation is independent of any request for expedited relief and is made to ensure that the statutory adjudicative structure mandated by Congress is observed before any merits determination concerning the constitutionality or continued enforcement of the challenged election framework. Plaintiff further alleges that although related election-law proceedings were heard by a three-judge district court pursuant to 28 U.S.C. § 2284, Plaintiff was not a party to those proceedings and did not receive a merits adjudication of the constitutional and federal-law claims alleged here. Plaintiff sought limited intervention under Federal Rule of Civil Procedure 24 for the purpose of presenting these issues and was denied leave to intervene. Accordingly, no prior proceeding resolved the merits of the claims asserted in this action, and jurisdiction properly lies in this Court to adjudicate them in the first instance.

## III. THE PARTIES

1. Plaintiff **Carl Gordon** is a resident of California and a registered California voter. Plaintiff proceeds **pro se**. Plaintiff brings this action in his capacity as a voter and public participant in California elections and as a former fee-paying potential replacement candidate in the 2021 California gubernatorial recall election. Plaintiff seeks declaratory and prospective injunctive relief only.

2. Defendant Gavin Newsom is the Governor of the State of California and is sued in his official capacity only. At all relevant times, Defendant Newsom exercised executive authority over statewide election administration, including the approval, implementation, and enforcement of election-related statutes, redistricting measures, and the administration of elections conducted using federally supported election infrastructure.

3. Defendant Shirley N. Weber is the California Secretary of State and is sued in her official capacity only. At all relevant times, Defendant Weber served as the State's chief elections officer and was responsible for the administration, oversight, and certification of statewide elections, including elections conducted pursuant to Proposition 50 and related statutory frameworks Defendants DOES 1 through 10 are persons or entities whose identities are presently unknown to Plaintiff but who participated in, exercised authority over, or contributed to the enactment, administration, funding, oversight, or enforcement of the election frameworks challenged in this action. Plaintiff will seek leave of Court to amend this Complaint to substitute the true names and capacities of these defendants when their identities are ascertained.

4.   Each Defendant is sued solely for official actions alleged to have been taken under color of state or federal law. Plaintiff does not seek damages against any Defendant and does not assert claims against Defendants in their individual capacities.

## IV. CHRONOLOGICAL STATEMENT OF FACTS

*This section records what happened, in order. It is not argument. It is the record.*

### A. Executive Order N-03-19[1] and Acknowledged Conflict (January 7, 2019)

On January 7, 2019, Governor Gavin Newsom issued Executive Order N-03-19, prohibiting state agencies from entering contracts with entities in which he or his family held financial interests. The Order expressly identified the PlumpJack Group, a network of alcohol-serving establishments, as a covered interest.

By issuing this Order, Governor Newsom formally acknowledged the existence of a disqualifying conflict of interest under California law, including Government Code §§ 87100, 8920, and 1090.

---

[1] Executive Order N-03-19 does not grant Governor Newsom immunity from Government Code § 87100, § 815.6, federal Help America Vote Act (HAVA) requirements, or recall-related constitutional constraints. The Order is legally incapable of conferring immunity and instead constitutes probative evidence of conflict awareness, duty recognition, and foreseeable risk, none of which excuse unlawful participation in conflicted or federally preempted election decisions.

**B. Initiation of the Gubernatorial Recall (February 20–21, 2020)**

1. On February 20–21, 2020, a *Notice of Intention to Recall Governor Gavin Newsom* was filed and file-stamped by the California Secretary of State, Alex Padilla, pursuant to California Elections Code §§ 11020–11023. From that date forward, the recall of the Governor Gavin Newsom was formally initiated as a matter of statutory law.

2. Article II, Section 14(a) of the California Constitution provides:

   "Recall of a state officer is initiated by delivering to the Secretary of State a petition alleging reason for recall. Sufficiency of reason is not reviewable.

3. Article II, Section 14(a) is self-executing and defines the precise constitutional moment at which a recall is *initiated*: delivery of the recall petition to the Secretary of State. Judicial review of the sufficiency of the stated reason is expressly prohibited.

4. The filing and file-stamping of the Notice of Intention to Recall on February 20–21, 2020 therefore constituted constitutional initiation of the gubernatorial recall within the meaning of Article II, Section 14(a).

5. The initiation of the recall triggered Article II, Section 17 of the California Constitution, which provides:

   "If recall of the Governor or Secretary of State is initiated, the recall duties of that office shall be performed by the Lieutenant Governor or Controller, respectively."

6. Article II, Section 17 is self-executing and does not require judicial enforcement or legislative implementation to take effect. Upon initiation of

the recall, recall-related duties of the Governor were reassigned by operation of law.

## C. Constitutional Disability and Mandatory Transfer of Authority

4. Article V, Section 10 of the California Constitution provides that when the Governor is subject to a constitutional prohibition, that condition constitutes a "temporary disability" of the office.

5. In *In re Governorship*, 26 Cal. 3d 110, 134–36 (1979), the California Supreme Court held that a constitutional prohibition on the exercise of gubernatorial authority operates as a legal disability requiring mandatory substitution of authority, and that duties affected by such a disability must be performed by the constitutionally designated substitute officer.

6. Under *In re Governorship*, a constitutional disability does not suspend the existence of the office itself but limits the lawful authority of the officeholder to act with respect to matters within the scope of the disability.

7. From February 20–21, 2020 forward, recall-related duties of the Governor were therefore constitutionally assigned to the Lieutenant Governor as a matter of law.

## D. Legal Effect of Constitutional Disability on Subsequent Election Legislation

8. The constitutional reassignment of recall-related authority described above had immediate legal effect.

9.  From February 20–21, 2020 forward, Governor Newsom lacked lawful authority to perform recall-related or election-administration duties within the scope of the recall, including approving legislation governing polling-place eligibility and election funding.

10. Any executive action taken by Governor Newsom thereafter with respect to recall-related election statutes was therefore ultra vires and without constitutional force.

11. Notwithstanding this constitutional disability, Governor Newsom signed and implemented Senate Bill 423 (2020) and Senate Bill 152 (2021), each of which added identical operative language through § 1603(c).

12. Because this language directly governed polling-place eligibility and election administration during an active gubernatorial recall, and because recall-related duties had been constitutionally reassigned to the Lieutenant Governor, Governor Newsom lacked authority to approve or implement § 1603(c) in either SB 423 or SB 152.

13. The repetition of identical language across election cycles confirms a continuing course of action taken during a period of constitutional disability by Governor Newsom.

**E. Senate Bill 423 (2020) — Presidential Election Cycle**

**1.** On January 7, 2019, Governor Newsom issued Executive Order N-03-19 addressing conflicts of interest tied to his ownership interests in alcohol-serving businesses operated by the PlumpJack Group. The Order barred state executive agencies from contracting with those entities and reflects the conflict-of-interest

prohibitions embodied in Government Code §§ 87100, 8920, and 1090. The inference is clear that California Fair Political Practices Commission conflict-of-interest laws and regulations motivated the issuance of the Order.

**2.** Notwithstanding the issuance of Executive Order N-03-19 in 2019, and notwithstanding his constitutional and statutory disqualification arising from a temporary legal disability under *In re Governorship* (1979) 26 Cal.3d 110, triggered by the initiation of the gubernatorial recall on February 20–21, 2020, Governor Newsom approved and signed Senate Bill 423 (2020) into law on August 6, 2020, during the 2020 presidential election cycle, authorizing polling places to operate in alcohol-serving establishments.

**3.** Section 1603(c) of Senate Bill 423 temporarily repealed California Elections Code § 12288, a long-standing statutory prohibition on polling places operating in establishments whose primary purpose is the sale or service of alcoholic beverages.

**4.** By temporarily repealing Elections Code § 12288, SB 423 § 1603(c) authorized polling places to operate in bars and restaurants and further authorized the use of federal grant funds, including Help America Vote Act (HAVA) and CARES Act election funds, to lease, equip, staff, and maintain alcohol-serving locations as polling sites during the November 2020 presidential election.

**5.** Governor Newsom's execution and implementation of SB 423 and SB 152 occurred while he retained ownership interests in alcohol-serving businesses, after he had issued Executive Order N-03-19 acknowledging the need for safeguards against conflicted decision-making in matters involving such entities,

and during a period in which recall-related duties had been reassigned by operation of Article II, Section 17 of the California Constitution.

**F.** Senate Bill 152 (2021) — Gubernatorial Recall Election Cycle

**7.** On June 28, 2021, Governor Newsom signed Senate Bill 152 (2021) into law.

**8.** Senate Bill 152 again adopted identical operative language through § 1603(c), extending and reaffirming the same authorization first enacted in 2020, permitting polling places to operate in alcohol-serving establishments during the 2021 gubernatorial recall election.

**9.** SB 152 further continued the use of federal election funds, including HAVA-related funding, to lease, equip, staff, and maintain alcohol-serving locations as polling places during the recall election.

**10.** By June 28, 2021, Governor Newsom was subject to an active gubernatorial recall. Under Article II, Section 17 and Article V, Section 10 of the California Constitution, recall-related election duties had been constitutionally reassigned to the Lieutenant Governor as a matter of law in February 2020.

**11.** Governor Newsom therefore lacked constitutional authority to approve or implement SB 152 § 1603(c). His execution of that statute constituted an *ultra vires* act taken during a period of constitutional disability under Article V, Section 10 of the California Constitution and *In re Governorship* (1979) 26 Cal. 3d 110, 134–36.

## G. Void Ab Initio Carry-Forward Effect

**12.** Under settled constitutional doctrine, actions taken by an official who lacks constitutional authority at the time of action are void ab initio.

**13.** Where authority is withdrawn by operation of the Constitution, subsequent executive approval cannot validate the act, nor can later legislative reliance, voter participation, or administrative implementation cure the defect.

**14.** Accordingly, SB 423 § 1603(c) and SB 152 § 1603(c) are void from inception to the extent they were approved or implemented by California Governor Gavin Newsom while constitutionally disqualified from exercising recall-related authority and while subject to conflict-of-interest prohibitions under California law administered by the Fair Political Practices Commission.

**15.** All California statewide elections and special election procedures conducted from 2020 through 2025, including the November 4, 2025 special election conducted pursuant to the Election Rigging Response Act, as well as the polling-place authorizations and funding decisions flowing from those provisions, inherit the same constitutional defect.

## H. Condensed Timeline of the Constitutional and Statutory Sequence

*(For Record Clarity)*

**16.** January 7, 2019 — Governor Newsom issues Executive Order N-03-19, addressing conflicts of interest involving the PlumpJack Group and alcohol-serving businesses.

**17.** February 20–21, 2020 — Notice of Intention to Recall Governor Gavin Newsom is filed and file-stamped by the California Secretary of State; Article II,

Section 17 of the California Constitution is triggered; recall-related duties are
reassigned by operation of law.

**18.** August 6, 2020 — Governor Newsom signs Senate Bill 423 § 1603(c),
temporarily repealing Elections Code § 12288 and authorizing polling places in
alcohol-serving establishments during the presidential election.

**19.** June 28, 2021 — Governor Newsom signs Senate Bill 152 § 1603(c), using
identical language to extend the same authorization during the gubernatorial
recall election.

**20.** 2022 — Assembly Bill 2037 permanently amends Elections Code § 12288,
carrying forward the policy first enacted during the period of constitutional
disability.

**21.** 2024–2025 — Statewide elections, including the November 4, 2025,
Proposition 50 special election, are conducted under this statutory framework.

## V. FEDERAL PREEMPTION, CONSTITUTIONAL DISABILITY, AND VOID ENACTMENT AND IMPLEMENTATION OF AB 2037 AS APPLIED TO PROPOSITION 50 AND THE 2026 STATEWIDE ELECTIONS

**1.** Assembly Bill 2037 (Flora, 2022) amended California Elections Code § 12288
to authorize the placement of polling locations in facilities that sell or serve
alcoholic beverages, provided the polling area is physically separated from
alcohol service. AB 2037 thus permits polling locations in mixed-use facilities
whose commercial operations include alcohol sales.

**2.** Federal law expressly prohibits the use of federal funds to subsidize alcohol-related costs. Under 2 C.F.R. § 200.423, "[c]osts of alcoholic beverages are unallowable" for purposes of federal awards, including election-related grants administered pursuant to the Help America Vote Act ("HAVA"), 52 U.S.C. §§ 20901–21145.

**3.** Although AB 2037 is not facially invalid under state law, it is preempted under the Supremacy Clause of the United States Constitution, Article VI, Clause 2, to the extent it is implemented using federal election funds in a manner that subsidizes, reimburses, or otherwise supports alcohol-related operations. Where state authorization conflicts with federal funding conditions, federal law controls.

**4.** This federal conflict applies with particular force to Proposition 50 and to the June 2026 statewide primary election and November 2026 statewide general election, each of which constitutes federally regulated election activity for which California has historically relied upon, and is reasonably expected to rely upon, federal HAVA funds subject to 2 C.F.R. Part 200.

**5.** To the extent state or county election officials place polling locations for Proposition 50 or the 2026 statewide elections in facilities that sell or serve alcohol, and then use federal funds to pay for facility rental, utilities, staffing, security, equipment, or other shared overhead expenses that subsidize alcohol-related operations, such expenditures violate 2 C.F.R. § 200.423 and are unlawful.

**6.** Compounding this federal violation, Governor Gavin Newsom was constitutionally disqualified from participating in legislation and executive actions affecting alcohol-related election infrastructure due to his ongoing

financial interest in the PlumpJack Group, which owns and operates alcohol-serving establishments throughout California.

**7.** Under Article V, Section 10 of the California Constitution, when the Governor is unable to lawfully discharge the powers and duties of office, those powers and duties devolve upon the Lieutenant Governor. In *In re Governorship*, 26 Cal. 3d 110 (1979), the California Supreme Court confirmed that a Governor's constitutional "disability" is not limited to physical incapacity and includes legal incapacity arising from conflicts of interest that prevent the lawful exercise of executive authority.

**8.** Governor Newsom's ownership interest in the PlumpJack Group, combined with his January 7, 2019 Executive Order N-03-19 acknowledging such conflicts, rendered him constitutionally disabled from lawfully participating in executive or legislative acts authorizing or expanding the use of alcohol-connected facilities for election infrastructure, including the signing of AB 2037 (2022) and related enactments governing Proposition 50 and subsequent statewide elections.

**9.** Actions taken by a constitutionally disabled Governor are void *ab initio*. Because AB 2037 and related election-enabling statutes were signed by an official acting without constitutional authority, their implementation—particularly in federally funded statewide elections—cannot lawfully override federal funding restrictions or cure Supremacy Clause violations.

**10.** Accordingly, the enactment and implementation of AB 2037, as applied to Proposition 50, the June 2026 statewide primary election, and the November 2026 statewide general election, where federal election funds are used in violation of 2 C.F.R. § 200.423, is preempted by federal law and void as applied.

Voter approval or subsequent administrative reliance cannot cure a constitutional and federal-law defect that existed at inception.

## VI. FEDERALLY FUNDED ELECTION ADMINISTRATION UNDER AB 2037 AND PROPOSITION 50 VIOLATES HAVA AND EAC GRANT CONDITIONS

1. Federal election administration in California is funded in material part through grants administered by the U.S. Election Assistance Commission ("EAC") pursuant to the Help America Vote Act ("HAVA"), 52 U.S.C. §§ 20901–21145, and related federal appropriations, including CARES Act election funding.

2. HAVA funds are not general revenue. They are conditional federal grants, accepted by the State of California and its counties subject to compliance with federal statutes, regulations, and cost-allowability rules, including the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards, codified at 2 C.F.R. Part 200.

3. Among those binding conditions is 2 C.F.R. § 200.423, which provides categorically that "[c]osts of alcoholic beverages are unallowable." This prohibition applies not only to direct purchases, but to any use of federal funds that subsidizes, offsets, or materially supports alcohol-serving operations.

4. Assembly Bill 2037 (2022) authorizes polling locations in facilities that sell or serve alcohol, provided the polling area is physically separated from alcohol service. While AB 2037 purports to regulate polling-place

eligibility under state law, it does not—and cannot—alter the conditions attached to federal election funds.

5. **Proposition 50**, together with its enabling and implementing legislation—including Assembly Constitutional Amendment 8 (ACA 8), Senate Bill 280, and Assembly Bill 604—requires the administration of statewide elections using the same federally funded election infrastructure relied upon in prior election cycles, including voting equipment, staffing, accessibility accommodations, and election security measures funded in whole or in part with HAVA and EAC-administered funds.

6. In practice, California's election system operates as an integrated, system-wide deployment of federally funded resources, not as isolated site-specific expenditures. Voting equipment, ballot-on-demand systems, secure storage, cybersecurity measures, training, and staffing funded with federal grants are routinely deployed across polling locations within a county's election plan.

7. As a result, when polling locations authorized under AB 2037 include facilities that sell or serve alcohol, federal election funds necessarily touch those sites, either directly or indirectly, through:

   o placement and operation of federally funded voting equipment;

   o staffing and training costs supported by federal grants;

   o security, accessibility, and compliance measures required by federal law; and

   o overhead costs that subsidize the venue's continued operation.

8.  Federal grants law does not permit states to avoid cost-allowability rules
    through physical separation, temporary suspension of alcohol service, or
    creative allocation of expenses. Where federal funds reduce the cost of
    operating an alcohol-serving facility, even indirectly, the prohibition of §
    200.423 is violated.

9.  The EAC has no authority to waive cost-principle restrictions imposed by
    OMB, and states may not override those restrictions through ballot
    measures, statutes, or election regulations. Acceptance of federal election
    funds binds the recipient to federal conditions as a matter of law.

10. Accordingly, even apart from questions of state constitutional authority,
    the administration of Proposition 50 and related statewide elections using
    AB 2037-authorized polling locations conflicts with federal grant
    conditions whenever federal election funds are used, rendering such
    implementation unlawful under federal law.

11. This conflict is structural rather than episodic. Because federal election
    funds are deployed system-wide, the placement of even a subset of polling
    locations in alcohol-serving venues taints the funding stream supporting
    the entire election.

12. The use of federal funds under these circumstances exposes the State and
    its subdivisions to:

- disallowance and clawback of federal election funds;

- adverse audit findings by federal Inspectors General;

- loss of eligibility for future HAVA or EAC grants; and

- potential liability under the False Claims Act, 31 U.S.C. §§ 3729–3733, for false certification of compliance with federal grant conditions.

13. Declaratory and prospective injunctive relief are therefore necessary to ensure that future statewide elections conducted pursuant to Proposition 50 and its enabling legislation comply with federal election-funding law, irrespective of the outcome of prior elections or interim judicial rulings addressing only election administration mechanics.

## VII. VOID AB INITIO LEGISLATIVE PACKAGE ENACTED AND IMPLEMENTED DURING CONSTITUTIONAL DISABILITY

**1.** "Void *ab initio*" means void from the beginning and without legal effect. An enactment adopted or approved by an official acting without constitutional authority is a nullity, confers no rights, imposes no obligations, and cannot be cured by subsequent events, including voter approval, legislative reliance, or administrative implementation.

**2.** As alleged above, Governor Gavin Newsom was constitutionally disabled under Article V, Section 10 of the California Constitution due to a disqualifying conflict of interest arising from his ownership interest in the PlumpJack Group and his participation in legislation and executive action affecting alcohol-related election infrastructure. Under *In re Governorship*, 26 Cal. 3d 110 (1979), such legal incapacity constitutes a constitutional "disability," during which the powers and duties of the Governor devolve upon the Lieutenant Governor.

**3.** Notwithstanding this constitutional disability, Governor Newsom promoted, endorsed, and approved a coordinated legislative package designed to place Proposition 50 on the ballot, fund and administer a statewide special election, and

implement contingent congressional redistricting measures. That package included, *inter alia*:

    **a.** Assembly Constitutional Amendment 8 (Rivas, McGuire), which purports to authorize adoption of a new, temporary congressional map in response to redistricting actions in another state;

    **b.** Senate Bill 280 (Cervantes, Pellerin), which establishes the timelines and procedures for conducting a statewide special election for Proposition 50 and appropriates funding for the election held on November 4, 2025; and

    **c.** Assembly Bill 604 (Aguiar-Curry, Gonzalez), which establishes temporary congressional district maps to take effect contingent upon voter approval of ACA 8.

**4.** This legislative package was publicly announced and advanced as part of a unified executive framework attributed to Governor Newsom, unveiled at the Democracy Center in Los Angeles, and promoted in coordination with advocacy organizations, labor unions, community groups, educators, and elected officials at the federal, state, and local levels.

**5.** Because Governor Newsom was constitutionally disabled at the time he promoted, approved, and caused the enactment and implementation of ACA 8, SB 280, and AB 604, his actions exceeded his lawful authority. Under Article V, Section 10 of the California Constitution, those powers had devolved to the Lieutenant Governor, and Governor Newsom lacked constitutional capacity to act.

**6.** Acts taken by a constitutionally disabled executive are void *ab initio*. Accordingly, ACA 8, SB 280, and AB 604—having been enacted and

implemented pursuant to executive action taken during a period of constitutional disability—are nullities from inception and lack lawful force or effect.

**7.** Moreover, to the extent this void legislative package was implemented using federal election funds, including funds governed by the Help America Vote Act and the cost-allowability rules of 2 C.F.R. § 200.423, its enforcement independently violates the Supremacy Clause of the United States Constitution.

**8.** Because ACA 8, SB 280, and AB 604 continue to be invoked as governing law for statewide elections and redistricting processes beyond Proposition 50, including the June 2026 statewide primary election and the November 2026 statewide general election, declaratory and prospective injunctive relief are necessary to prevent ongoing violations of federal and state constitutional law.

**9.** Plaintiff alleges and preserves the theory that the invalidity of this legislative package is not cured by subsequent voter approval, legislative reliance, or administrative implementation. This allegation is maintained notwithstanding the January 14, 2026 ruling by a federal three-judge panel of the United States District Court for the Central District of California in *David Tangipa, et al. v. Gavin Newsom*, which, pursuant to 28 U.S.C. § 2284, permitted the continued use of congressional maps adopted in connection with Proposition 50 for the 2026 midterm elections. *(That ruling addressed only interim election administration and did not reach the merits of the underlying constitutional validity of the enabling legislation, the existence or effect of gubernatorial constitutional disability, or the federal preemption issues alleged here.)* Plaintiff further alleges that he sought limited intervention in the *Tangipa* proceeding pursuant to Federal Rule of Civil Procedure 24 for the purpose of presenting these constitutional and

federal-law issues and was denied leave to intervene, and therefore did not
receive a merits adjudication of the claims alleged here. Plaintiff pleads this
allegation expressly to preserve the record and to disclaim any inference of issue
preclusion, claim preclusion, waiver, or merits adjudication arising from the
*Tangipa* proceeding, as jurisdictional or threshold rulings "do not resolve the
merits of the dispute." *Steel Co. v. Citizens for a Better Environment*, 523 U.S.
83, 101 (1998).

## VIII. BACKGROUND AND GOVERNING FEDERAL LAW

*(Settled Federal Grants Law — Not Discretionary Policy)*

### A. The Governing Federal Restriction

1. 2 C.F.R. § 200.423 (Alcoholic Beverages) is a binding federal cost-
   principle regulation promulgated under the Office of Management and
   Budget's Uniform Guidance and applies to all federal grants, including
   election grants administered pursuant to the Help America Vote Act
   ("HAVA"), 52 U.S.C. §§ 20901–21145, and CARES Act election funding.

2. Section 200.423 provides, without qualification, that "[c]osts of alcoholic
   beverages are unallowable." Under settled federal grants law, this
   prohibition is interpreted broadly, not narrowly. It bars not only the direct
   purchase of alcohol, but also the use of federal funds in ways that
   subsidize, support, or are materially connected to alcohol-serving
   environments.

3. This regulation is not discretionary policy. It is a categorical condition of
   federal funding imposed government-wide pursuant to 31 U.S.C. §§ 503

and 6301–6308, and is binding on all recipients once federal funds are accepted.

## B. Application to Elections and Polling Places

4. When federal election funds—including HAVA funds, CARES Act election funds, or federally supported election infrastructure—are used for:

   ○ polling-place rental or leasing;

   ○ deployment or reuse of voting equipment;

   ○ staffing, security, or accessibility improvements;

   ○ vote-by-mail or in-person infrastructure reused at physical sites; or

   ○ reimbursement of county election-administration costs;

those funds may not be used in facilities where alcohol is sold or dispensed.

5. This prohibition applies regardless of:

   ○ whether alcohol sales are "incidental";

   ○ whether alcohol is sold in a different room;

   ○ whether alcohol service is suspended during voting hours;

   ○ whether alcohol sales are handled by a different legal entity; or

   ○ whether the polling area is physically separated by partitions or signage.

6. Federal grants law evaluates the facility as a whole, not creative compartmentalization. If a facility's ordinary commercial function includes

alcohol sales, federal funds may not lawfully support election activities conducted there.

## C. The "Regardless of Separation" Rule

7. Federal cost-principle enforcement does not permit:

   o "different room" arguments;

   o "bar closed during voting" arguments;

   o "separate lease" or "separate operator" arguments; or

   o "multi-use facility" justifications where alcohol is part of the venue's business model.

8. The reason is structural: using federal funds at such locations offsets rent, utilities, staffing, insurance, security, depreciation, and infrastructure costs, thereby indirectly subsidizing alcohol-serving operations, which § 200.423 categorically forbids.

## D. Direct Application to HAVA Funds

9. HAVA funds are federal grant funds, subject to the Uniform Guidance at 2 C.F.R. Part 200, and restricted to lawful election-administration purposes.

10. Accordingly, any polling place located in a bar, winery, brewery, restaurant with alcohol service, hotel lounge, or similar venue is federally disqualified if federal funds are used anywhere in the election system supporting that site, including through reuse of federally funded equipment or infrastructure.

**E. Why This Is Not a Technicality**

11. Federal agencies treat violations of § 200.423 as compliance and fraud matters, not paperwork errors. Such violations can trigger:

- grant disallowance and clawback;

- Inspector General referrals;

- loss of future grant eligibility; and

- False Claims Act exposure.

12. In the election context, such violations additionally result in structural noncompliance, tainting election administration and undermining federal-law compliance governing the integrity of the electoral process.

**F. Rejection of "Separation" Arguments**

13. Courts and auditors consistently reject arguments such as:

- "the bar area was roped off";

- "alcohol was not sold during voting";

- "the polling place was only a conference room"; or

- "the venue is primarily something else."

14. Because the venue's revenue model includes alcohol, and federal funds indirectly support that venue's operations, separation theories fail as a matter of law.

## G. Settled Federal Grants Law

15. The Uniform Guidance is implemented government-wide, not agency-by-agency. Agencies cannot waive it by preference, states cannot override it by statute, and courts treat it as a binding condition of federal funds.

16. In federal grants law, "unallowable" means categorically barred, not subject to balancing, equitable exceptions, or good-faith defenses. Alcohol is grouped with absolute prohibitions such as lobbying and entertainment, not discretionary costs.

17. Federal auditors evaluate whether federal funds subsidized or freed resources for alcohol-serving operations, including rent, utilities, staffing, security, infrastructure, equipment placement, and commercial benefit. Even temporary use creates a prohibited subsidy.

18. This doctrine has been applied for decades by OMB, GAO, and **Inspectors General** across federal grant programs, including election grants. Election administration is not exempt.

## H. Supremacy Clause Consequences

19. Under the Supremacy Clause of the United States Constitution, Article VI, Clause 2, state authorization of polling locations in alcohol-serving venues does not confer federal permission to use federal funds at those locations.

20. A state may authorize the location, but federal funds may not touch it. Where federal election funds are used system-wide and polling places include alcohol-serving venues, the violation is structural, not site-specific, and taints the entire funding stream.

**Accordingly**

21. Federal election funds may not be used—directly or indirectly—at facilities where alcohol is sold or dispensed, regardless of physical separation, timing, or creative structuring.

22. When such funds are used anyway, the issue is not administrative discretion but objective federal noncompliance, potentially constituting false certification and creating a structural defect in election administration as a matter of law.

## CLAIMS FOR RELIEF

## CLAIM ONE

**(Supremacy Clause — Federal Preemption)**
*(Against All Defendants in Their Official Capacities)*

Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

The Supremacy Clause of the United States Constitution, Article VI, Clause 2, provides that federal law is the supreme law of the land and preempts conflicting state law and state practices.

California administers statewide elections using federal election grants provided through the United States Election Assistance Commission pursuant to the Help America Vote Act ("HAVA"), 52 U.S.C. §§ 20901–21145, and related federal appropriations. Those funds are subject to the Uniform Guidance, including the

categorical prohibition in 2 C.F.R. § 200.423 against the use of federal funds in connection with alcohol-serving facilities.

To the extent Defendants implement Proposition 50, Assembly Bill 2037, Assembly Constitutional Amendment 8, Senate Bill 280, Assembly Bill 604, or related election frameworks using federal election funds in a manner that subsidizes or supports polling locations in facilities where alcohol is sold or dispensed, such implementation conflicts with binding federal funding conditions and is preempted by federal law.

Federal funding conditions are mandatory and non-waivable. State authorization of polling locations in alcohol-serving facilities does not confer federal permission to use federal funds at those locations.

Plaintiff seeks declaratory and prospective injunctive relief to prevent ongoing and future violations of the Supremacy Clause arising from the federally funded implementation of the challenged election framework.

## CLAIM TWO

**(Declaratory Relief — 28 U.S.C. § 2201)**
*(Against All Defendants in Their Official Capacities)*

An actual and justiciable controversy exists between Plaintiff and Defendants regarding the legality of the prospective implementation of Proposition 50 and its enabling legislation under federal election-funding law and constitutional constraints.

Plaintiff seeks a declaration that the use of federal election funds, including HAVA funds, in connection with polling locations in alcohol-serving facilities violates 2 C.F.R. § 200.423 and is preempted under the Supremacy Clause.

Plaintiff further seeks a declaration clarifying the respective constitutional and statutory limits governing the administration of future statewide elections and redistricting measures implemented pursuant to Proposition 50.

Declaratory relief is appropriate to resolve uncertainty regarding the parties' legal obligations and to guide future conduct before further elections are conducted under the challenged framework.

## CLAIM THREE

**(Prospective Injunctive Relief — Ex parte Young)**
*(Against All Defendants in Their Official Capacities)*

Defendants are responsible for the ongoing and prospective administration of statewide elections and redistricting measures implemented pursuant to Proposition 50 and related legislation.

Absent prospective injunctive relief, Defendants will continue to administer elections using federally funded election infrastructure in a manner that conflicts with binding federal funding conditions and constitutional limits.

Plaintiff seeks prospective injunctive relief prohibiting Defendants from using federal election funds, directly or indirectly, to support polling locations in facilities where alcohol is sold or dispensed, and requiring compliance with

applicable federal election-funding law in future statewide elections and redistricting processes.

This relief is authorized under *Ex parte Young*, 209 U.S. 123 (1908), and is necessary to prevent ongoing and future violations of federal law.

## CLAIM FOUR

**(Ultra Vires Action / Constitutional Disability)**
*(Against Defendant Gavin Newsom in His Official Capacity)*

Plaintiff realleges and incorporates by reference all preceding paragraphs.

Under Article V, Section 10 of the California Constitution, and as construed by the California Supreme Court in *In re Governorship*, 26 Cal.3d 110 (1979), a Governor who is constitutionally disabled from exercising certain powers lacks lawful authority to act with respect to those matters.

Plaintiff alleges that Governor Gavin Newsom was constitutionally disqualified from participating in executive and legislative actions affecting alcohol-related election infrastructure due to a disqualifying conflict of interest and the reassignment of recall-related authority by operation of law.

To the extent the challenged election framework was approved or implemented by an official acting without constitutional authority, such actions are ultra vires and void as applied, and may not be enforced prospectively.

Plaintiff seeks declaratory and prospective injunctive relief to prevent continued reliance on actions taken without lawful constitutional authority.

## STATEMENT OF UNDISPUTED FACTS

*(For Pleading and Record Purposes)*

1. Plaintiff is a California voter and was a fee-paying prospective replacement candidate in the 2021 California gubernatorial recall election.

2. California administers statewide elections using federal election funds, including grants provided pursuant to the Help America Vote Act ("HAVA"), 52 U.S.C. §§ 20901–21145, and related federal appropriations.

3. Federal election grants, including HAVA funds, are subject to the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards, codified at 2 C.F.R. Part 200.

4. 2 C.F.R. § 200.423 provides, without qualification, that "costs of alcoholic beverages are unallowable" for purposes of federal awards.

5. California Elections Code § 12288 historically prohibited polling places from operating in facilities where alcoholic beverages are sold or dispensed.

6. In 2022, Assembly Bill 2037 amended Elections Code § 12288 to authorize polling locations in facilities that sell or serve alcohol, subject to physical-separation conditions under state law.

7. California conducted a statewide special election on November 4, 2025, adopting Proposition 50, which was implemented through enabling legislation including Assembly Constitutional Amendment 8, Senate Bill 280, and Assembly Bill 604, and which governs future statewide elections and redistricting processes.

8. California has historically relied upon, and is reasonably expected to rely upon, federal election funds in administering statewide primary, general, and special elections, including elections conducted pursuant to Proposition 50.

9. Federal law does not permit the use of federal election funds, directly or indirectly, to subsidize polling locations in facilities where alcohol is sold or dispensed, regardless of physical separation or timing of alcohol service.

10. Plaintiff seeks prospective declaratory and injunctive relief only, to ensure that future statewide elections are administered in compliance with binding federal law and constitutional constraints.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

**A. Declare** that the use of federal election funds, including funds provided pursuant to the Help America Vote Act, in connection with polling locations located in facilities where alcohol is sold or dispensed violates 2 C.F.R. § 200.423 and is preempted by federal law under the Supremacy Clause of the United States Constitution;

**B. Declare** that state authorization of polling locations in alcohol-serving facilities does not confer federal permission to use federal election funds at those locations;

**C.** Enjoin prospectively Defendants, in their official capacities, from using federal election funds, directly or indirectly, to support polling locations in

facilities where alcohol is sold or dispensed in future statewide elections;

**D.** Enjoin prospectively Defendants from administering statewide elections and redistricting processes pursuant to Proposition 50 or related legislation in a manner that conflicts with binding federal election-funding conditions;

**E. Declare** the respective rights and obligations of the parties under federal election-funding law and the Supremacy Clause, pursuant to 28 U.S.C. § 2201;

**F.** Award costs as permitted by law; and

**G**. Grant such other and further relief as the Court deems just and proper.

**H. Declare** that, to the extent Assembly Bill 2037, Assembly Constitutional Amendment 8, Senate Bill 280, Assembly Bill 604, and any related election-enabling enactments were approved or implemented by an official acting without constitutional authority or in violation of binding federal election-funding conditions, such enactments are void and unenforceable *as applied* in the prospective administration of statewide elections and redistricting processes.

**Dated**: January 20, 2025                    Respectfully submitted,

Carl Gordon
Plaintiff Pro Se
8306 Wilshire Blvd., No. 792
Beverly Hills, CA 90211
universityofthehood@gmail.com
(310) 926-3939

**PROOF OF SERVICE**

I, Mae Gordon, declare as follows:

1. I am employed in the City and County of Los Angeles, State of California. I am over the age of eighteen (18) years and not a party to the within action. My address is 1125 South Holt Avenue, Apt. 3, Los Angeles, California 90035.

2. On January 20, 2026, I served the following document: FIRST AMENDED COMPLAINT (Declaratory and Prospective Injunctive Relief) (28 U.S.C. §§ 1331, 1343, 2201–2202) (Three-Judge Court Required Under 28 U.S.C. § 2284)

3. Service was effected by electronic mail to the following recipients at the email addresses listed below:

Attorney General of California
Todd Grabarsky
Supervising Deputy Attorney General
Todd.Grabarsky@doj.ca.gov
Samuel E. Sokolsky
Deputy Attorney General
State Bar No. 348173
455 Golden Gate Ave, Ste 11000, San Francisco, CA 94102
Telephone: (415) 510-3584
Fax: (415) 703-5480
E-mail: Samuel.Sokolsky@doj.ca.gov
Attorneys for Defendant Gavin Newsom, in his official capacity as Governor of California, and Shirley N. Weber, in her official capacity as California Secretary of State

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 20, 2026, at Los Angeles, California.

Mae Gordon